UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-04714-TWP-TAB |
| | ) | |
| STANLEY KNIGHT, | ) | |
| CLINTON FELDKAMP, | ) | |
| TY ROBBINS, | ) | |
| MORGAN FEENEY, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Screening Complaint and Directing Further Proceedings**

**I. Screening Standard**

The plaintiff, James Hamilton, is a prisoner currently incarcerated at Plainfield Correctional Facility ("PCF"). Because Mr. Hamilton is a "prisoner" as defined by 28 U.S.C. § 1915(h), this Court has an obligation under 28 U.S.C. § 1915A(b) to screen his Complaint before service on the defendants. Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the Complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the Complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints such as that filed by Mr. Hamilton are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Obriecht v. Raemisch*, 517 F.3d 489, 491 n.2 (7th Cir. 2008).

## II. The Complaint

The assertions in Mr. Hamilton's Complaint are summarized as follows. Each offender at PCF is assigned a security classification of 1, 2, or 3. Level 1 offenders present the lowest security threats and therefore require the lowest level of security and supervision; Level 3 offenders present heightened threats and therefore require heightened security and supervision. At all times relevant to the Complaint, PCF had a practice of housing Level 1 offenders in its East Dormitory and housing Level 2 and 3 Offenders in its South Dormitory. *See* dkt. 2 at ¶¶ 15, 17.

On March 7, 2017, Mr. Hamilton was reclassified from Level 2 to Level 1 and asked his Unit Manager, Robert Marks, to be transferred from South Dormitory to East Dormitory. *Id.* at ¶¶ 13, 16. On Marks's advice, Mr. Hamilton sent a written request to Defendant Morgan Feeney, who was responsible for overseeing inmates' housing assignments. *Id.* at 18. Mr. Hamilton received no response.

On April 21, 2017, Defendant Clinton Feldkamp, an Internal Investigations Officer, interviewed Mr. Hamilton concerning a drug-smuggling operation taking place at PCF. *Id.* at ¶¶ 29–30. Mr. Hamilton's responses implicated another inmate, Preston Atkinson, in the smuggling operation and were based on information Mr. Hamilton gained while on an outside work assignment with Atkinson. *Id.* at ¶¶ 31–32. After Officer Feldkamp suggested that Mr. Hamilton may be at risk of retaliation from Atkinson, Mr. Hamilton reiterated his request to be moved to a different housing unit, as Atkinson also was housed in South Dormitory. *Id.* at ¶¶ 33–35. Officer

Feldkamp indicated that Mr. Hamilton would be assigned to a new housing unit, but no further action was taken. *Id.* at ¶ 35.

On May 9, 2017, Atkinson returned to South Dormitory from disciplinary segregation and assaulted Mr. Hamilton, seriously injuring his right eye. *Id.* at ¶¶ 36–43. Atkinson acknowledged that he assaulted Mr. Hamilton because he had "snitched" and stated that other members of his prison gang would continue to assault Mr. Hamilton as a result. *Id.* at ¶¶ 39, 41–42.

On May 11, 2017, Mr. Hamilton reported the May 9 assault and his injuries to Mr. Marks. *Id.* at ¶ 48. Mr. Hamilton made clear that the assault was based on his cooperation with Internal Investigations. *Id.* Mr. Hamilton reiterated his request to be moved from South Dormitory and submitted another written request to Ms. Feeney. *Id.* at ¶¶ 48–49. Mr. Hamilton received no response.

On June 28, 2017, Defendant Ty Robbins reassigned Mr. Hamilton to the same outside work assignment where he was previously exposed to Atkinson and the smuggling operation. *Id.* at ¶ 53. Mr. Hamilton informed Mr. Robbins of that experience and his subsequent assault. *Id.* at ¶ 56. Mr. Hamilton asked Mr. Robbins to give him a different work assignment and to move him out of South Dormitory. *Id.* at ¶¶ 56–57. Mr. Robbins refused both requests. *Id.* at ¶ 58.

On July 27, 2017, Mr. Hamilton was assaulted again, this time by a different inmate. *Id.* at ¶¶ 61–67. This attacker later stated to Mr. Hamilton that the assault was an act of retaliation for cooperating with Internal Investigations. *Id.* at ¶ 79. Mr. Hamilton suffered serious injuries, including a broken left orbital bone. *Id.* at 72. PCF staff observed Mr. Hamilton's injuries and sent him for outside medical treatment. *Id.* at ¶¶ 71–72. The following day, Officer Feldkamp

interviewed Mr. Hamilton regarding the assault, and Mr. Hamilton was moved out of South Dormitory. *Id.* at ¶¶ 74–76.

Mr. Hamilton received operations on both eyes to repair injuries sustained in the assaults. In August 2017, doctors surgically reattached the retina in Mr. Hamilton's right eye, which began to bother him after the first assault. *See id.* at ¶ 50; 59–60, 70, 80–85, 87. And, although the left orbital bone fractured in the second assault ultimately healed without surgery, doctors performed an additional operation on Mr. Hamilton's left eye in December 2017. *Id.* at ¶¶ 86, 89. Mr. Hamilton states that he has sustained significant and permanent vision loss in his right eye. *Id.* at ¶ 104.

### III. Discussion of Claims

Mr. Hamilton alleges two claims, each based on the defendants' failure to protect him from violent assaults by other inmates. Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (*quoting Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To state a claim for failure to protect, the plaintiff must allege that the defendants knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Once prison officials know about a serious risk of harm, they have an obligation to take reasonable measures to abate it." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

A.      **Failure to Protect Based on Security Classification**

First, Mr. Hamilton alleges that Defendants Knight, Robbins, and Feeney had responsibility over inmates' housing assignments and failed to either enact or execute protocols that would have promptly reassigned Mr. Hamilton from South Dormitory to a lower security housing unit following his reclassification from Level 2 to Level 1. Dkt. 2 at ¶¶ 105, 107, 109. According to Mr. Hamilton, this demonstrated deliberate indifference toward a substantial risk that he would be harmed by a violent inmate and directly caused the injuries he sustained when he was assaulted. The Complaint does not allege that Defendant Knight knew of Mr. Hamilton's participation in the smuggling investigation, so it asserts as an abstract matter that Defendants Knight, Robbins, and Feeney must have known that housing a Level 1 inmate in South Dormitory obviously placed him at substantial risk of harm.

As this Court has previously observed, prison officials' failure to separate inmates based on differentiated security risks may be part of a deliberate indifference claim, but that typically "'is not itself a facial violation of the Eighth Amendment.'" *Carmichael v. Richards*, 307 F. Supp. 2d 1014, 1021 (S.D. Ind. 2004) (quoting *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 10 (1st Cir. 2002)). Instead, the plaintiff must show that a pervasive pattern of violence or a series of bad acts evidenced such an obvious risk of violence that the defendants must have been aware of it. *See Smith v. Sangamon Cnty. Sheriff's Dep't*, 188, 192–194 (7th Cir. 2013); *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 518–519 (7th Cir. 2002).[1]

---

[1] *Smith* and *Washington* involved claims by pre-trial detainees, but the court analyzed the failure-to-protect claims under the Eighth Amendment in each case. *See Smith*, 715 F.3d at 191 ("Because Smith was a pretrial detainee, his deliberate-indifference claim arises under the Fourteenth Amendment's Due Process Clause but is governed by the same standards as a claim for violation of the Eighth Amendment's prohibition against cruel and unusual punishment"); *Washington*, 306 F.3d at 518.

This claim is not based on factual allegations that, if true, would demonstrate deliberate indifference. Mr. Hamilton alleges that PCF has a general policy of housing Level 2 and 3 inmates in South Dormitory and housing Level 1 inmates in East Dormitory "for safety reasons." Dkt. 2 at ¶¶ 15, 17. He further alleges that South Dormitory is "known as the hub for inmate drug distribution, and so has the most disruptive and violent reputation in the entire prison." *Id.* at ¶ 15. But "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence," *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir.2000). Mr. Hamilton's Complaint does not describe a pervasive pattern of violence or a series of bad acts obviously demonstrating that a Level 1 inmate would be at a substantial risk of harm by remaining in South Dormitory.

Therefore, to the extent Mr. Hamilton claims that Defendants Knight, Robbins, and Feeney violated his civil rights by failing to transfer him out of South Dormitory strictly because of his Level 1 classification, that is a claim upon which no relief may be granted, and it is therefore **dismissed**. Because Mr. Hamilton does not assert any other claims against Defendant Knight, Defendant Knight is dismissed from this action.

**B.**     **Failure to Protect Based on Cooperation in Smuggling Investigation**

Second, Mr. Hamilton alleges that Defendants Feldkamp, Robbins, and Feeney failed to take appropriate action to protect him after being confronted with evidence that he was in danger due to his cooperation in the smuggling investigation. Dkt. 2 at ¶¶ 106, 108, 110. According to the Complaint, Defendant Feldkamp believed Mr. Hamilton was at risk after interviewing him regarding the smuggling operation, and Defendants Robbins and Feeney were notified following the first assault that Mr. Hamilton remained at ongoing risk of assault due to his cooperation in the investigation. The Complaint further alleges that none of the defendants took action to

protect Mr. Hamilton until after the second assault. If true, these allegations would establish that Defendants Feldkamp, Robbins, and Feeney knew of and disregarded a specific, excessive risk to Mr. Hamilton's safety. *See Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015) (holding that plaintiff could establish defendants' knowledge of a serious risk of harm with evidence showing he notified them in person and in writing that an inmate accused plaintiff of "snitching," threatened to stab plaintiff, and talked about members of his gang stabbing plaintiff).

Mr. Hamilton brings his claims against all the defendants in both their official and individual capacities under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). An official capacity claim against an individual as an employee of the Indiana Department of Correction is in essence a claim against the State of Indiana that is barred by the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 and n.14 (1985) (suit for damages against state officer in official capacity is barred by the Eleventh Amendment); *see also Omosegbon v. Wells,* 335 F.3d 668, 673 (7th Cir. 2003) (the state is not a "person" that can be sued under 42 U.S.C. § 1983). Although there are circumstances under which a plaintiff may seek prospective injunctive relief from an individual defendant in his official capacity, those circumstances are not present in this case because the Complaint does not allege any ongoing violation of Mr. Hamilton's constitutionally protected rights. *Indiana Protection and Advocacy Services v. Indiana Family and Social Services Admin.*, 603 F.3d 365, 371 (7th Cir. 2010).

Therefore, Mr. Hamilton's claims against Defendants Feldkamp, Robbins, and Feeney in their official capacities must be **dismissed**. But Mr. Hamilton's claims against Defendants

Feldkamp, Robbins, and Feeney in their individual capacities for failing to take appropriate action to protect him after learning of his ongoing danger following cooperation in the smuggling investigation shall **proceed as submitted**.

### IV. Duty to Update Address

Mr. Hamilton shall report any change of address within ten (10) days of any change. The Court must be able to locate Mr. Hamilton to communicate with him. If Mr. Hamilton fails to keep the Court informed of his current address, the action may be subject to dismissal for failure to comply with Court orders and failure to prosecute.

### V. Service of Process and Further Proceedings

Given the foregoing, Mr. Hamilton's claims against Defendants Feldkamp, Robbins, and Feeney in their individual capacities for failing to take appropriate action to protect him after learning of his ongoing danger following cooperation in the smuggling investigation shall **proceed as submitted**. All other claims are **dismissed**. If Mr. Hamilton believes that additional claims were alleged in the Complaint but not identified by the Court, he shall have **through March 23, 2018,** in which to identify those claims.

The clerk is **designated** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to Defendants (1) Clinton Feldkamp; (2) Ty Robbins; and (3) Morgan Feeney in the manner specified by *Fed. R. Civ. P.* 4(d). Process shall consist of the Complaint, applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry. Whereas the Court has now directed service, Mr. Hamilton's motion requesting service of process, dkt. [12], is **denied as moot**.

The clerk shall **update the docket** to reflect that Clinton Feldkamp, Ty Robbins, and Morgan Feeney are the defendants in this action.

**IT IS SO ORDERED.**

Date: 2/16/2018

_Tanya Walton Pratt_
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES HAMILTON
161556
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronic service to the following employees at Plainfield Correctional Facility:

Clinton Feldkamp

Ty Robbins

Morgan Feeney