UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES HAMILTON, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:17-cv-04714-TWP-TAB |
| STANLEY KNIGHT, CLINTON FELDKAMP, TY ROBBINS, MORGAN FEENEY, | ) |
| Defendants. | ) |

**ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT, DENYING MOTION TO APPOINT COUNSEL AND MOTION FOR SANCTIONS, RELINQUISHING SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS, AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff James Hamilton is a prisoner currently incarcerated at New Castle Correctional Facility. Defendants Stanley Knight, Clinton Feldkamp, Ty Robbins, and Morgan Feeney were staff members at Plainfield Correctional Facility (PCF) when Mr. Hamilton was previously incarcerated there. In this lawsuit, Mr. Hamilton alleges that the defendants failed to protect him from a known threat of violence at PCF in 2017 in a manner that violated his Eighth Amendment rights and amounted to negligence under Indiana law.

The defendants have moved for summary judgment on the Eighth Amendment claims, arguing that Mr. Hamilton failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this lawsuit. Believing the Eighth Amendment claims to be barred by the PLRA, the defendants ask the Court to relinquish its supplemental jurisdiction over the negligence claims.

For the reasons set forth below, the Court **grants** the defendants' motion for summary judgment. The Court also **denies** Mr. Hamilton's pending motion to appoint counsel and motion for sanctions, relinquishes its supplemental jurisdiction over Mr. Hamilton's state-law claims, and directs the clerk to enter final judgment in the defendants' favor.

## I. Motion for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *See Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

### A. Exhaustion of Administrative Remedies

The substantive law applicable to the motion for summary judgment is the PLRA, which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA." *Lanaghan v. Koch,* 902 F.3d 683, 687 (7th Cir. 2018). It is well-settled that "there is no 'futility' exception to a prisoner's duty to exhaust," even when the administrative remedies offered by the prison do not include damages. *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173–74 (7th Cir. 2010) (citing *Booth v. Churner,* 532 U.S. 731 (2001)).

**B.   The Grievance Process**

The Indiana Department of Correction (IDOC) Offender Grievance Process (OGP) provides inmates an avenue for resolving complaints regarding the conditions of their confinement. There is no dispute that the OGP was available to Mr. Hamilton at all times relevant to this action. The version of the OGP in effect at that time appears in the record at dkt. 44-1, pp. 8–32.

The OGP consists of the following three steps:

(i)   An informal attempt to solve a problem or address a concern, which can be followed by;

(ii)  Submission of a written form outlining the problem or concern and other supporting information, and the response to that submission, which can be followed by;

(iii) A written appeal of the response to a higher authority and the response to that appeal. The Department does not require an offender who is satisfied with the result at any step to proceed further with the process.

Dkt. 44-1 at 10.

The first step in the OGP requires an inmate to attempt to resolve his concern informally with an appropriate staff member.

> Before filing a grievance, an offender is required to attempt to resolve a complaint informally. The offender may do this by discussing the complaint with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurs.

Dkt. 44-1 at 20. Normally, the appropriate staff member will be "the staff person where the problem originates." *Id.* at 21. The inmate must initiate his efforts to resolve his concern informally within five business days of the incident giving rise to his concern. *Id.*

An inmate may document his efforts to resolve a concern informally using State Form 52897 and must do so in order to proceed to the second step and file a formal grievance. *Id.* at 20–23. However, the OGP does not indicate that an inmate must use State Form 52897 unless he wishes to file a formal grievance. Documentation of an informal grievance is only entered into the IDOC's records system, OGRE, "in the event the offender is not satisfied with the informal complaint process and wishes to file a formal grievance." *Id.* at 21.

If an inmate is unable to resolve his concern informally, he must proceed to the second step and file a formal grievance. The time by which an inmate must file a formal grievance depends on the response the inmate receives to his effort to resolve the issue informally. In any event, though, an inmate must file a formal grievance no later than 20 business days from the incident giving rise to the complaint. *Id.* at 23. Formal grievances must be submitted on State Form 45471. *See id.* at 9, 22–23.

Because it is undisputed that Mr. Hamilton never filed a grievance appeal, the Court gives no attention to that component of the OGP.

4

C.    Facts

The factual allegations in Mr. Hamilton's amended complaint are sworn under penalty of perjury, *see* dkt. 23 at 14, and are undisputed for purposes of this motion for summary judgment. The amended complaint describes two assaults—one occurring on May 9, 2017, and another occurring on July 27, 2017.

On April 21, 2017, Defendant Clinton Feldkamp, an Internal Investigations Officer, interviewed Mr. Hamilton concerning a drug-smuggling operation taking place at PCF. *Id.* at ¶¶ 31–32. Mr. Hamilton answered Officer Feldkamp's questions and, in doing so, implicated another inmate from his housing unit and work assignment, Preston Atkinson, in the smuggling operation. *Id.* at ¶¶ 33–34. Officer Feldkamp asked Mr. Hamilton if he feared retaliation by Atkinson. *Id.* at 35–37. Mr. Hamilton said he would feel safe as long as he was not housed with Atkinson. *Id.* at ¶ 37. Officer Feldkamp said, "We'll take care of that." *Id.* As a result of Mr. Hamilton's cooperation, Atkinson was disciplined.

On May 9, 2017, Atkinson was released from disciplinary segregation and returned to Mr. Hamilton's housing unit. *Id.* at ¶ 39. That day, Atkinson assaulted Mr. Hamilton, seriously injuring his right eye. *Id.* at ¶¶ 39–46. Atkinson acknowledged that he assaulted Mr. Hamilton because he had "snitched" and stated that other members of his prison gang would continue to assault Mr. Hamilton as a result. *Id.* at ¶¶ 42, 44.

On May 11, 2017, Mr. Hamilton reported the May 9 assault and his injuries to Defendant Robert Marks, his unit manager. *Id.* at ¶ 51. Mr. Hamilton made clear that the assault stemmed from his cooperation with Internal Investigations and asked to be moved to a different housing unit. *Id.* Mr. Marks said he would attempt to arrange a different housing assignment by contacting Defendant Morgan Feeney, the unit team manager. *Id.* at ¶ 52. Mr. Hamilton also sent a written

5

request for a new housing assignment to Ms. Feeney. *Id.* Ms. Feeney never responded to Mr. Marks or Mr. Hamilton.

On June 28, 2017, Defendant Ty Robbins reassigned Mr. Hamilton to the same outside work assignment where he was previously exposed to Atkinson and the smuggling operation. *Id.* at ¶ 56. Mr. Hamilton informed Mr. Robbins of that experience and his subsequent assault. *Id.* at ¶ 56. Mr. Hamilton asked Mr. Robbins to give him a different work assignment and to move him to a different housing unit. *Id.* at ¶¶ 58–60. Mr. Robbins refused both requests. *Id.* at ¶ 61. Mr. Hamilton also notified Mr. Marks of his work assignment, and Mr. Marks said he would speak with Mr. Robbins, but he did not achieve a reassignment. *Id.* at 58.

On July 27, 2017, Mr. Hamilton was assaulted again, this time by a different inmate. *Id.* at ¶¶ 64–70. This attacker later stated to Mr. Hamilton that the assault was an act of retaliation for cooperating with Internal Investigations. *Id.* at ¶ 82. On July 28, 2017, Officer Feldkamp interviewed Mr. Hamilton regarding the second assault, and Mr. Hamilton was moved to a new housing unit. *Id.* at ¶¶ 77–79.

After raising concerns about his safety to Officer Feldkamp, Mr. Marks, Ms. Feeney, and Mr. Robbins, Mr. Hamilton never submitted a formal grievance on the issue using State Form 45471.

**D.     Analysis**

The record before the Court leaves no question that Mr. Hamilton never completed all three steps in the OGP. Although it appears that Mr. Hamilton made numerous efforts to resolve his concerns informally, he never filed a formal grievance to complete even the second step in the process.

Mr. Hamilton argues that he presented four documents to prison administrators that constituted "a formal attempt to prompt an investigation" of the attacks against him. *See* dkt. 54 at 4. Those documents are:

- a notice of tort claim dated December 15, 2017, and addressed to the Indiana Attorney General, dkt. 23 at 15;

- a certified mail receipt for that notice, dated December 19, 2017, dkt. 23 at 16;

- a request dated January 18, 2018, that the PCF staff preserve certain evidence of the incidents, dkt. 55-5; and

- a certification filed in this Court on January 18, 2018, that he requested that the PCF staff preserve that evidence, dkt. 10.

But Mr. Hamilton did not present any of these documents on State Form 45471 as required by the OGP. Moreover, he did not submit any of these documents within 20 business days of the incidents forming the basis for his lawsuit as required by the OGP.

Mr. Hamilton asserts that his safety concerns and the defendants' failure to take them seriously were not matters for which the OGP offered an administrative remedy. But the text of the OGP tells a different story. Mr. Hamilton's safety concerns were "concerns relating to conditions of care or supervision within" the prison, and the defendants' failure to protect him were "[a]ctions of individual staff." *See* dkt. 44-1 at 11. Mr. Hamilton correctly notes that the OGP identifies "Tort Claims" in a list of matters that are not grievable under the OGP, *see id.* 44-1 at 11–12, and that he has tort claims pending in this lawsuit. *See id.* at 12. However, this reference to tort claims appears to be based on an Indiana statute and IDOC policy requiring inmates to utilize a different administrative remedy process to seek compensation for losses of property. *See* Ind. Code § 34-13-3-7 ("Administrative claim for inmate's recovery of property"); IDOC, *Tort Claims for Property Loss*, Policy & Admin. Procedure No. 00-01-104 (eff. Feb. 1, 2013) (avail. at https://www.in.gov/idoc/files/00-01-104%20Tort%20Claims%202-1-2013.pdf).

7

Mr. Hamilton also argues that the exhaustion defense is not available in this case because the only relief that can be offered to him at this stage is financial compensation, which is not available through the OGP. In essence, he contends that, because money is not available through the OGP, any exhaustion efforts would have been futile. But it is well-settled that "there is no 'futility' exception to a prisoner's duty to exhaust," even when the administrative remedies offered by the prison do not include damages. *Fletcher*, 623 F.3d at 1173–74.

In short, the OGP provided an administrative remedy process that Mr. Hamilton could have used to present his concerns about his safety and the defendants' failure to protect him. Mr. Hamilton failed to utilize that process before initiating this lawsuit. The PLRA therefore requires that the Court **grant** the defendants' motion for summary judgment and **dismiss** Mr. Hamilton's Eighth Amendment claims **with prejudice**.

## II. Pending Motions

Mr. Hamilton's motion to appoint counsel, dkt. [56], is **denied**. Mr. Hamilton's motion does not show that he made a reasonable attempt to secure private counsel. *See Thomas v. Anderson*, 908 F.3d 1086 (7th Cir. 2018) (because neither of the plaintiff's requests for counsel showed that he tried to obtain counsel on his own or that he was precluded from doing so, the judge's denial of these requests was not an abuse of discretion) (citing *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc)).

Additionally, Mr. Hamilton has competently litigated this action on his own through the exhaustion phase. This is not a case where "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) (quoting *Pruitt,* 503 F.3d at 655). Mr. Hamilton's filings showed that he understood and was able to effectively communicate

his claims and the events on which they were based. He does not argue that he was unable to obtain critical evidence that would show he exhausted his administrative remedies. Rather, the evidence simply shows that he failed to exhaust, and the assistance of an attorney would not change that fact.

Mr. Hamilton's motion for sanctions, dkt. [61], is also **denied**. This motion reasserts the argument that Mr. Hamilton was not obligated to grieve his failure-to-protect claims through the OGP because they are tort claims. Mr. Hamilton cannot prevail on this argument for the reasons discussed in Part I(D)above.

### III. Supplemental Jurisdiction over State-Law Claims

Mr. Hamilton's negligence claims are rooted in Indiana law. Because they were joined with his Eighth Amendment claims, the Court exercised supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367. With the Eighth Amendment claims dismissed, the Court must determine whether it is appropriate to continue to exercise supplemental jurisdiction over the state-law claims.

The Court has discretion whether to exercise supplemental jurisdiction over a plaintiff's state-law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

"Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Sharp Electronics v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) (citation and quotation marks omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (internal quotation omitted).

The Court finds no reason to deviate from the usual practice in this case. The statute of limitations will not have run on Mr. Hamilton's state-law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1. Because this action has proceeded only through the exhaustion phase, it is not at all clear how the negligence claims should be decided. The Court has not expended significant resources on the pending state-law claims. To the extent the parties have expended resources toward the state-law claims, any evidence or legal research that would have been relevant in a federal case should be every bit as relevant in a state-court proceeding. Finally, as always, comity favors allowing state courts to decide issues of state law.

For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over Mr. Hamilton's negligence claims and **dismisses** them **without prejudice**.

### IV. Conclusion and Further Proceedings

For the reasons discussed in Part I above, the defendants' motion for summary judgment, dkt. [44], is **granted**, and Mr. Hamilton's Eighth Amendment claims are **dismissed with**

**prejudice**. For the reasons discussed in Part II above, Mr. Hamilton's motion to appoint counsel, dkt. [56], and his motion for sanctions, dkt. [61], are **denied**. Finally, for the reasons discussed in Part III above, the Court exercises its discretion to relinquish supplemental jurisdiction over Mr. Hamilton's state-law claims, which are **dismissed without prejudice**.

Final judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/1/2019

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES HAMILTON
161556
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov

Mollie Ann Slinker
INDIANA ATTORNEY GENERAL
mollie.slinker@atg.in.gov